UNITED STATES DISTRICT COURT　　　SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
June 20, 2019
David J. Bradley, Clerk

| | | |
|---|---|---|
| Vallourec Drilling Products USA, Inc., | § § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-16-2650 |
| B.J.'s Drill Stem Testing, Inc., | § § | |
| Defendant. | § § | |

## Opinion on Summary Judgment

1. *Introduction.*

Vallourec Drilling Products USA, Inc., sold drill pipe to B.J.'s Drill Stem Testing, Inc., in 2014. Vallourec required B.J. to pay 30% of the purchase price – $384,824.52 – as a deposit. B.J. paid the deposit and nothing more. Because B.J. breached the contract, it loses.

2. *Background.*

In May 2014, B.J. and Vallourec negotiated for the sale of pipe. Joey Keeping was B.J.'s purchasing agent. Keeping had acted as B.J.'s pipe purchasing agent four times before the May 2014 order, three of those orders were from Vallourec.

Keeping ordered 620 joints of 4" drill pipe and 60 joints of 4" heavy-weight drill pipe for $1,282,748.40. The contract required B.J. to pay 30% of the purchase price as a non-refundable deposit when the order was placed, another 30% payment within 60-days, and the remaining 40% within the next 90-days.

Vallourec sent the invoice to B.J. on May 28, 2014. On May 30, 2014, B.J. paid Vallourec $384,824.52. On June 6th, Vallourec told B.J. that part of its order was ready for pickup. The next day, B.J. told Keeping to cancel the order. Keeping denies this. B.J. says that Keeping cancelled the order on June 9th.

B.J. has not paid the $897,923.88 balance, nor has it picked up the pipe. Vallourec has always possessed the pipe, and it has stored it, on B.J.'s behalf, at an outdoor storage yard. On August 31, 2016, Vallourec filed this lawsuit. On June 1, 2018, B.J. filed for bankruptcy in North Dakota. The bankruptcy court has lifted the automatic stay for this case.

3. *Agency.*

Keeping was B.J.'s agent, and he had the authority to place the order. He had purchased pipe on B.J.'s behalf four times before, three times with Vallourec. When he made the fourth purchase, B.J. had not revoked his agency. Corey Welter, one of two B.J. managers, admits that B.J. gave Keeping "authority to order from Vallourec a string of hard banded 4-inch drill pipe, including 60 joints of 4-inch heavyweight pipe."[1]

Sometime after May 2014, B.J. learned that Keeping was soliciting its clients for his own company and revoked his authority. B.J. needed to tell Vallourec that Keeping was no longer authorized to act on its behalf. It did not.

Even if B.J. is correct that Keeping was not its agent when he negotiated the purchase order, B.J. ratified his authority, and thus the contract, when it paid the deposit. B.J. cannot say that Keeping was not its agent and that he had no authority to place the order when it had (a) allowed him to do it three times before, (b) told him to cancel the order, and (c) did not tell Vallourec that Keeping's agency had been revoked or never existed.

4. *The Contract.*

The contract – a sales order acknowledgment – like the three other dealings between Vallourec and B.J., incorporated Vallourec's terms and conditions into it. Vallourec's quote on the price, the order acknowledgment stating that Vallourec's terms and conditions apply, and a copy of the terms and conditions were sent to Vallourec with the order acknowledgment and invoice. Both the order acknowledgment and invoice are addressed to Drill Tech LLC, B.J.'s trade name. Keeping signed and returned the order acknowledgment to Vallourec.

B.J. knew of the terms and conditions before placing the order. The offer said that the terms and conditions apply. The parties's three prior dealings incorporated the same terms and conditions in the same way they were incorporated here. Under the terms and conditions, an order cancellation must be in writing and signed by both parties. That did not happen. B.J. breached the contract.

5. *Damages.*

Vallourec cannot recover the full price of the pipe if it was able to sell some of the pipe and mitigate its damages. B.J. relies on the fact that, when it inspected the pipe, there were 619 – rather than 620 – pipe joints stored and that some of the serial numbers do not match the numbers in the invoice to assert that Vallourec did sold some of the pipe. However, B.J. did not

---

[1] Exhibit A of B.J.'s response to Vallourec's motion for summary judgment.

inspect the pipe until October 16, 2018 – nearly four years after the purchase and two after Vallourec sued.

B.J. cannot know that the stored pipe is not the original pipe. Under the contract, B.J. was required to inspect the pipe within fifteen days of it being delivered. The pipe was shipped as ex-works Houston – the pipe was delivered when Vallourec made it available for B.J. to pick-up in Houston. Because B.J. never inspected the pipe or attempted to take possession, B.J. cannot show that Vallourec delivered the wrong pipe, sold part of the pipe, or otherwise failed to adhere to the contract. The risk of loss was on B.J., not Vallourec.

The pipe was manufactured for a specific purpose. Because the pipe was manufactured for B.J., Vallourec's ability to mitigate its damages are constrained by the fact that it is pipe that cannot be used as pipe to fill general orders. The market for general pipe is larger than the market for pipe made for one specific use. The few times this pipe could have been sold to a customer, Vallourec made an offer but no customer accepted it. This is not Vallourec's fault. Vallourec has satisfied its duty to mitigate damages.

Because the terms and conditions were a part of the contract, B.J.'s argument that Vallourec incorrectly calculated damages is misguided. Specifically, the contract's terms and conditions state that the (a) storage costs are B.J.'s responsibility and (b) interest of 1.5% per month on the unpaid balance accrues monthly, beginning thirty days from the invoice date. Finally, B.J. filed for bankruptcy on June 1, 2018 – not June 1, 2017. Because Vallourec's attorney's fees and the interest on the contract's balance are pre-petition, Vallourec may recover $1,630,739.45 from B.J.

6. Conclusion.

Because B.J. never told Vallourec that it had renounced its authority for Keeping to be its agent, his actions were B.J.'s. B.J. ratified the contract – and its terms and conditions – when it paid the first installment. If at one point in the four years after it was delivered, Vallourec moved some of the original joints, it was free to do so as long as it met the original terms. The one missing joint is *de minimis*. Vallourec will recover $1,630,739.45 from B.J.

Signed on June 20, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge